# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————————————

No.  22-10994

———————————————

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**vs.**

**ALEJANDRINO POPOCA,**

**Defendant-Appellant.**

———————————————

## OPENING BRIEF OF APPELLANT
## ALEJANDRINO POPOCA

———————————————

**Appeal from the United States District Court**
**For the Northern District of Florida, Pensacola Division**
**Criminal No. 3:10-cr-00067-RV-EMT-1**
**Honorable C. Roger Vinson, Senior U.S. District Court Judge**

———————————————

ALEJANDRINO POPOCA
REG. NO. 07408-017
FCI BASTROP
FEDERAL CORR. INSTITUTION
P.O. BOX 1010
BASTROP, TX  78602
Appearing *Pro Se*

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### No. 22-10994

## UNITED STATES OF AMERICA,

**Plaintiff-Appellee,**

**vs.**

## ALEJANDRINO POPOCA,

**Defendant-Appellant.**

## OPENING BRIEF OF APPELLANT
## ALEJANDRINO POPOCA

**Appeal from the United States District Court**
**For the Northern District of Florida, Pensacola Division**
**Criminal No. 3:10-cr-00067-RV-EMT-1**
**Honorable C. Roger Vinson, Senior U.S. District Court Judge**

ALEJANDRINO POPOCA
REG. NO. 07408-017
FCI BASTROP
FEDERAL CORR. INSTITUTION
P.O. BOX 1010
BASTROP, TX 78602
Appearing *Pro Se*

## CERTIFICATE OF INTERESTED PERSONS

Defendant-Appellant, appearing *pro se,* and in compliance with Fed. R. App.

P. 26.1 and 11th Cir. R. 26.1-1, certifies that the following listed persons and parties

have an interest in the outcome of this case:

    1)    ALEJANDRINO POPOCA, Defendant-Appellant

    2)    UNITED STATES OF AMERICA, Plaintiff-Appellee

        Robert Gardner Davies, U.S. Attorney's Office
        Steven Butler, U.S. Attorney's Office
        Lennard B. Register, III, U.S. Attorney's Office

    3)    UNITED STATES DISTRICT COURT

        Honorable C. Roger Vinson, Senior U.S. District Court Judge
        Honorable Elizabeth M. Timothy, U.S. Magistrate Judge

 

                                        _____

                                      ALEJANDRINO POPOCA

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Course of Proceedings and Disposition Below . . . . . . . . . . . . . . . . . 1

    B.    Statement of the Relevant Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    **The District Court abused its discretion in denying Popoca's Motion for Compassionate Release because Popoca has exhausted the available administrative remedy and he has met the "extraordinary and compelling reasons" requirement to warrant a sentence reduction**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                          **Page(s)**

*Alleyne v. United States*, 570 U.S. 99 (2013)............................ 25-26

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)........................... 25-26

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)................................. 8

*Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, No. 19-1778 (2d Cir. Mar. 20, 2020)....................................................... 16

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) ............................... 8

*Nathson Fields v. City of Chicago*, et al., 981 F. 3d 534 (7th Cir. 2020)........ 29

*Singh v. Barr*, No. 20-CV-02346-VKD (N.D. Cal. Apr. 20, 2020)............ 24

*Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)........... 8

*United States v. Battle*, ____ F. App'x ____, 2021 WL 4550925, (3d Cir. 2021) . . . 9

*United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ................ 31

*United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)................. 35

*United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021) .................... 8

*United States v. Campagna*, No. 16 Cr. 78 (LGS) (S.D.N.Y. Mar. 27, 2020) . . . 22

*United States v. Clark*, 2019 WL 1052020, at *1, 3 (W.D.N.C. 2019)......... 10

*United States v. Clark*, Case No. 11-CR-30-2-JPS (E.D. Wis. Jul. 23, 2020) . . . 34

*United States v. Davis*, No. 07-CR-245(S)(1) (W.D.N.Y. Mar. 6, 2019) ....... 26

*United States v. Dana*, No. 14 Cr. 405 (JMF) (S.D.N.Y. Mar. 31, 2020)....... 22

*United States v. Dodd*, 372 F. Supp.3d 795 (S.D. Iowa, Apr. 9, 2019). . . . . . . . 26

*United States v. Foster*, No. 1:14-cr-324-02 (M.D. Pa. Apr. 3, 2020) . . . . . . . . 23

*United States v. Gerard Scparta*, No. 18 Cr. 578 (AJN) (S.D.N.Y. Apr. 19, 2020)24

*United States v. Gileno*, 2020 WL 1307108, *3-4 (D. Conn. 2020) . . . . . . . . . . 10

*United States v. Godofsky*, 2020 WL 2188047, *2 (E.D. Ky. 2020). . . . . . . . . . 10

*United States v. Gold*, 2020 WL 2197839 (N.D. Ill. 2020). . . . . . . . . . . . . . . . 10

*United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) . . . . . . . . . . . . 31

*United States v. Gunn*, No. 20-1959 (7th Cir. Nov. 20, 2020).. . . . . . . . . . . . . 34

*United States v. Harris*, 989 F.3d 908, 910, 912 (11th Cir. 2021) . . . . . . . . . . . 9

*United States v. Hernandez*, No. 18 Cr. 834 (PAE) (S.D.N.Y. Apr. 1, 2020). . . . 22

*United States v. Huneeus*, No. 19 Cr. 10117 (IT) (D. Mass. Mar. 17, 2020), . . . 23

*United States v. Johnson*, 2020 WL 2124461 (E.D.N.Y. May 5, 2020) . . . . . . . . 10

*United States v. Jones*, No. 20-3701 (6th Cir. Nov. 20, 2020). . . . . . . . . . . . . . 34

*United States v. Laguerre*, No. 5:02-CR-30098-3 (W.D. Va. Feb. 22, 2019). . . . 26

*United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006). . . . . . . . . . . . . . . 32

*United States v. Lynn*, 2019 WL 3082202, at *1-3 (S.D. Ala. 2019) . . . . . . . . . . 10

*United States v. Martin*, No. 18 Cr. 232 (TOR) (E.D. Wa. Mar. 25, 2020) . . . . . 22

*United States v. Maumau*, No. 2:08-CR-00758-TC-11(D. Utah Feb. 18, 2020). . 34

*United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) . . . . . . . . . . . . . . . . . . . 34

*United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) . . . . . . . . . . . . . . 32

*United States v. Muniz*, No. 09 Cr. 199 (S.D. Tex. Mar. 30, 2020). . . . . . . . . . . 23

*United States v. Owens*, 996 F.3d 755 (6th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) . . . . . . . . . . . . . . . . . 31

*United States v. Parker*, No. 98-CR-00749(C.D. Cal. May 21, 2020) . . . . . . . . 34

*United States v. Perez*, No. 17 Cr. 513 (AT) (S.D.N.Y. Apr. 1, 2020), . . . . . . . 21

*United States v. Powell*, No. 1:94-cr-0316-ESH (D.D.C. Mar. 24, 2020). . . . . . 23

*United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) . . . . . . . . . . . . . . . . . 32

*United States v. Redd*, 444 F. Supp. 3d 717, 729 (E.D. Va. 2020) . . . . . . . . . . . 33

*United States v. Resnick*, No. 12 Cr. 152 (CM) (S.D.N.Y. April 2, 2020) . . . . . . 21

*United States v. Rodriguez*, No. 03 Cr. 271 (AB) (E.D. Pa. Apr. 1, 2020) . . . . . . 22

*United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) . . . . . . . . . . 32

*United States v. Sain*, Case No. 07-20309 (E.D. Mich. Oct. 6, 2020). . . . . . . . . 33

*United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) . . . . . . . . . . . . . . . 32

*United States v. Simons*, 375 F.Supp.3d 379, 487(E.D.N.Y. 2019) . . . . . . . . . . . 26

*United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008). . . . . . . . . . . . . . . . . 32

*United States v. Torres-Rodriguez*, 511 F. App'x 866 (2013). . . . . . . . . . . . . . . . 7

*United States v. Urkevich*, No. 8:03CR37(D. Neb. Nov. 14, 2019) . . . . . . . . . . . 34

*United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) . . . . . . . . . . 31

*United States v. Watkins*, No. 15-20333 (E.D. Mich. Jul. 16, 2020) . . . . . . . . . . 24

*United States v. Williams*, No. 04 Cr. 95 (MCR) (N.D. Fla. Apr. 1, 2020) . . . . . . 22

*United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) . . . . . . . . . . . . 32

**Statutes, Rules and Regulations**

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 922(g)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 924(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 924(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 27-28, 30-32, 35-36

18 U.S.C. § 3582(c)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 24

18 U.S.C. § 3582(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28, 35

18 U.S.C. § 3665 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 841(b)(1)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 841(b)(1)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

USSG § 1B1.10(b)(1)................................................ 27

USSG § 2D1.1(c)(4)................................................. 5

USSG § 2D1.1(c)(5)................................................ 28

USSG § 3B1.1(a) ................................................... 5

USSG § 3C1.1 ................................................. 5, 28

USSG § 3D1.2(d) .................................................. 5

Fed. R. Crim. P. 32(i)(1)(C) ........................................ 6

## APPENDIX

District Court's Order Denying Popoca's Motion for Compassionate Release . 1A

Notice of Appeal of the Denial of Motion for Compassionate Release ....... 2A

District Court's Order Denying Popoca's IFP Motion .................... 3A

## STATEMENT OF JURISDICTION

This is an appeal from the denial of Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Motion for Compassionate Release"), on February 1, 2022. See Appendix 1A; Doc. 494.[1] Popoca filed a Notice of Appeal on March 25, 2022. See Appendix 2A; Doc. 495. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the District Court abused its discretion in denying Popoca's Motion for Compassionate Release because Popoca has exhausted the available administrative remedy and he has met the "extraordinary and compelling reasons" requirement to warrant a sentence reduction.

## STATEMENT OF THE CASE

### A.    Course of Proceedings and Disposition Below

On June 15, 2010, a grand jury sitting in the United States District Court for the Northern District of Florida, Pensacola Division, returned a six (6) count Indictment charging Popoca and five other co-defendants. See Doc. 34. Count 1

---

[1]    "Doc." refers to the United States District Court for the Northern District of Florida, Pensacola Division in Criminal No. 3:10-cr-00067-RV-EMT-1, which is immediately followed by the Docket Entry Number.

charged Popoca with Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii). *Id.* Count 2 charged Popoca with Possession with Intent to Distribute 500 Grams or More of Cocaine, in violation of 21 U.S.C. § 841(b)(1)(B)(ii) and 18 U.S.C. § 2. *Id.* Count 3 charged Popoca with Using, Carrying, and Possessing a Firearm During and In Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1). *Id.* Count 4 charged Popoca with Possession of a Firearm by an Illegal Alien, in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2). *Id.* The Indictment also contained a Firearm Forfeiture, pursuant to 18 U.S.C. § 3665. *Id.*

On September 29, 2010, a three-day jury trial commenced. See Doc. 141.

On October 1, 2010, the grand jury returned a guilty verdict as to Popoca on Counts 1-4 of the Indictment. See Doc. 146.

On December 8, 2010, Popoca was sentenced to a term of 360 months' imprisonment, 5 years supervised release, $2,000.00 Fine, and a Mandatory Special Assessment Fee of $400.00. See Docs. 189, 224.

On December 21, 2010, Popoca timely filed a Notice of Appeal. See Doc. 201.

On March 1, 2013, the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") issued an Order affirming the judgment of the District Court. See Doc. 306.

2

On October 7, 2013, Popoca filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), which was denied March 9, 2017. See Docs. 324, 329, 448, 449.

On January 21, 2022, Popoca filed a Motion for Compassionate Release, which was denied on February 21, 2022. See Docs. 492, 494.

## B.    Statement of the Relevant Facts

### 1.    Offense Conduct

The information contained in this section of the presentence report was obtained from the U.S. Attorney's Office, the Drug Enforcement Administration (DEA) and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). See PSR ¶ 12.[2]

In December 2005, the government began an investigation of a large cocaine distribution network in the Northern District of Florida. This network originated from the Foley and Elberta, Alabama, area. Numerous Indictments and convictions were obtained during the course of this ongoing investigation. On September 29, 2009, Edgar and Sammy Granados, pled guilty to Conspiracy to Possess With Intent to Distribute Cocaine, in the Southern District of Alabama. On April 8, 2010, Charles

---

[2]

"PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

Nettles pled guilty to Conspiracy to Possess With Intent to Distribute Cocaine, in the Northern District of Florida. These defendants in related cases have provided information that has further uncovered criminal cocaine trafficking activity concerning those named in- this Indictment. See PSR ¶ 13.

### 2.    Trial Proceeding

On September 29, 2010, a jury trial was held Before Senior Judge Roger Vinson. See Doc. 141. Popoca was found guilty as to Counts 1 through 4 of the Indictment. See Doc. 146. The case was referred to the U.S. Probation Office for the preparation of the PSR. See Doc. 185.

### 3.    Presentence Report Calculations and Recommendations

On November 2, 2010, the U.S. Probation office prepared Popoca's PSR, which was revised on December 1, 2010. *Id.* The 2010 edition of the Guidelines Manual has been used in this case as there are no ex post facto concerns. See PSR ¶ 54. Pursuant to USSG § 3D1.2(d), the offense level is determined largely on the quantity of a substance involved, all counts shall be grouped into a single Group. Therefore, Counts 1, 2 and 4 were grouped together. See PSR ¶¶ 55-56. The PSR recommended a Base Offense Level of 34 because Popoca was held accountable for 37 kilograms of cocaine, pursuant to USSG § 2D1.1(c)(4). See PSR ¶ 58. Four (4) levels were added because Popoca was an organizer or leader, pursuant to USSG §

4

3B1.1(a). See PSR ¶ 61. Two (2) levels were added for obstruction of justice, pursuant to USSG § 3C1.1. See PSR ¶ 62. The PSR calculated Popoca's Total Offense Level to be level 40. See PSR ¶ 68. Popoca's total criminal history points of 0, placed him in Criminal History Category I. See PSR ¶ 71. Based upon a Total Offense Level of 40 and a Criminal History Category of I, the guideline imprisonment range was 292 to 365 months. On Count 3, the guideline imprisonment range was 60 months, which must run consecutive to Counts 1, 2 and 4. See PSR ¶ 103-104.

    4.    <u>Sentencing Proceeding</u>

On December 8, 2010, a Sentencing Hearing was held before Senior Judge Roger Vinson. See Doc. 189. The Court sentenced Popoca to a 300-month term of imprisonment on Counts 1 and 2, a concurrent 120-month term of imprisonment on Count 4, and a consecutive 60-month term of imprisonment on Count 3. See Doc. 224 at 1-2. A timely Notice of Appeal was filed on December 21, 2010. See Doc. 201.

    4.    <u>Appellate Proceeding</u>

On Appeal, Popoca raises three issues: (1) Whether the jury instructions and the Government's closing argument constructively amended the indictment; (2) Whether the evidence was sufficient to establish Popoca's convictions for use, carrying, or possession of a firearm in furtherance of a drug trafficking crime and for possession of a firearm while unlawfully in the United States; and (3) Whether the

district court violated Fed. R. Crim. P. 32(i)(1)(C) and his due process right to notice when it relied on evidence outside of the Presentence Investigation Report in enhancing his sentence for obstruction of justice and drug quantity. After careful review, the Eleventh Circuit concluded that Popoca's claims lack merit and affirmed his sentences and convictions. See Doc. 306; *United States v. Torres-Rodriguez*, 511 F. App'x 866 (2013).

### 5.    PostconvictionProceeding

On October 7, 2013, Popoca filed a § 2255 Motion and amended it on November 12, 2013, alleging that his attorney rendered ineffective assistance of counsel in Grounds One through Seven. He further alleges that his advisory guidelines range was computed on the basis of facts not established by a jury finding of proof beyond every reasonable doubt. See Docs. 324, 329. On February 12, 2014, the government filed a Response in Opposition ("GR")to Popoca's § 2255 Motion, requesting the Court to deny Popoca's motion without a hearing. See Doc. 344. On March 10, 2014, Popoca filed a Reply to GR. See Doc. 348. On January 23, 2017, Magistrate Judge Elizabeth M. Timothy issued a Report and Recommendation ("R&R") recommending that Popoca's motion be denied. See Doc. 434. On March 7, 2017, Popoca filed an Objection to R&R. See Doc. 447. On March 9, 2017, the Court adopted the R&R and denied Popoca's § 2255 Motion. See Docs. 448, 449.

## ARGUMENT

As a preliminary matter, Popoca respectfully requests that this Court be mindful that *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed. See *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

### A.    Standard of Review

Because Section 3582(c)(1)(A) permissively states that a district court "may" reduce a sentence after eligibility is established, we review for abuse of discretion a district court's grant or denial of an eligible defendant's reduction request. See *United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021).

### B.    The District Court Abused Its Discretion in Denying Popoca's Motion for Compassionate Release Because Popoca Has Exhausted the Available Administrative Remedy and He Has Met the "Extraordinary and Compelling Reasons" Requirement to Warrant a Sentence Reduction.

#### 1.    Administrative Requirement

The government conceded that Popoca has met the administrative and statutory requirements to seek relief in the District Court, stating that:

"The government concedes Popoca made a request for compassionate release to the Warden of the prison where he is incarcerated, and 30 days passed before he filed his motion for compassionate release. A copy of

7

the warden's letter denying Popoca's request for compassionate release
is attached to this response as Exhibit 1."

See Doc. 493 at 3. Hence, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

As Popoca's motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release. For Defendant to be eligible for compassionate release, the Court, after considering the relevant factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Popoca's term of imprisonment and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

2.    "Extraordinary and Compelling Reasons" for Release

The District Court's judgment denying Popoca's Motion for Compassionate Release should be reversed and remanded for consideration because Popoca has exhausted the available administrative remedy and he has met the "extraordinary and compelling reasons" requirement to warrant a sentence reduction.

The District Court's Order denying Popoca's Motion for Compassionate Release was based on the reasons set out in the GR [Doc. 493], which reads as follows:

Popoca has not established that he has a serious medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. See *United States v. Battle*, ___ F. App'x ___, 2021 WL 4550925, *1-3 (3d Cir. 2021) (ruling the defendant "did not make the threshold showing that 'extraordinary and compelling reasons' supported his compassionate release" where the defendant had asthma and hypertension, had contracted and recovered from COVID-19, and had been fully vaccinated against COVID-19); *United States v. Harris*, 989 F.3d 908, 910, 912 (11th Cir. 2021) (affirming district court's denial of compassionate release where the defendant had lupus, scleroderma, hypertension, glaucoma, and past cases of bronchitis and sinus infections); *United States v. Olds*, Case No. 3:09cr4/MCR, Doc. 93, pages 3-4 & n.4 (N.D. Fla. 2021) (compassionate release denied where the defendant had hypertension, a body mass index of approximately 32, major depressive disorder, anxiety disorder, and post-traumatic stress disorder, was a former smoker, and had been vaccinated against COVID-19); *United States v. Gold*, 2020 WL 2197839 (N.D. Ill. 2020) (compassionate release denied for a 65-year-old defendant who is suffering from pre-emphysema, high blood pressure, and high cholesterol, conditions that "are common and do not appear to be among those the CDC has identified as significant risk factors"); *United States v. Godofsky*, 2020 WL 2188047, *2 (E.D. Ky. 2020) (denying compassionate release because, "even in the context of the ongoing public health crisis," a 63-year-old defendant who is suffering from high blood pressure, high cholesterol, and asthma and who is taking medications that weaken his immune system does not present an extraordinary or compelling circumstance); *United States v. Johnson*, 2020 WL 2124461 (E.D.N.Y. May 5, 2020) (concluding that high blood pressure and heart murmur "do not meet the standard of extraordinary or compelling circumstances, even in light of the COVID-19 pandemic"); *United States v. Gileno*, 2020 WL 1307108, *3-4 (D. Conn. 2020) (ruling that a defendant with asthma, a back injury, lifelong anxiety, high blood pressure, high cholesterol, and allergies had not demonstrated that his medical condition was such that he could no longer provide self-care and was not entitled to compassionate release); *Mattingly*, 2020 WL 974874, *5-6 (ruling that a defendant who was a

9

double amputee with limited ability to ambulate had not demonstrated that his medical condition was such that he could no longer provide self-care and was not entitled to compassionate release); *Lisi*, 440 F.Supp.3d at 250-51 (ruling that a defendant with chronic asthma; a maxillary cyst; chronic pain in his back, shoulders, and left arm; and chronic high blood pressure had not demonstrated that his medical condition was such that he could no longer provide self-care and was not entitled to compassionate release on that basis); *United States v. Clark*, 2019 WL 1052020, at *1, 3 (W.D.N.C. 2019) (ruling that a defendant who had diabetes, stage-3 kidney failure, and back issues requiring a walker had not demonstrated that his medical condition was such that he could no longer provide self-care and was not entitled to compassionate release); *United States v. Lynn*, 2019 WL 3082202, at *1-3 (S.D. Ala. 2019) (ruling that a defendant who had stage-2 chronic kidney disease, atrial fibrillation, moderate to severe coronary disease, and other illnesses, had not demonstrated that his medical condition was such that he could no longer provide self-care and was not entitled to compassionate release).

Based on the facts of this case and the above authorities, the Court should rule that Popoca is not eligible for compassionate release because he has failed to show extraordinary and compelling reasons.

See Doc. 493 at 8-10.

Popoca raised the following issues as "extraordinary and compelling reasons," warranting a sentence reduction as argued in his initial Motion for Compassionate Release [Doc. 492]:

        a.    <u>Popoca's Current Conditions of Confinement and Health Conditions</u>

Popoca, age 44, suffers from incurable, progressive disease, from which Popoca will never recover, to wit: hypertension and allergic rhinitis, on top of the list

10

of medical conditions he has. See Doc. 493-2.

**Facts:**

***Hypertension***. Hypertension is another name for high blood pressure. It can lead to severe health complications and increase the risk of heart disease, stroke, and sometimes death.Blood pressure is the force that a person's blood exerts against the walls of their blood vessels. This pressure depends on the resistance of the blood vessels and how hard the heart has to work.

Hypertension is a primary risk factor for cardiovascular disease, including stroke, heart attack, heart failure, and aneurysm. Keeping blood pressure under control is vital for preserving health and reducing the risk of these dangerous conditions.

***Allergic Rhinitis.*** Allergic rhinitis, also called hay fever, is an allergic reaction that causes sneezing, congestion, itchy nose and sore throat. Pollen, pet dander, mold and insects can lead to hay fever symptoms. Hay fever can make you feel awful, but you can find relief with lifestyle changes, allergy medications and immunotherapy (allergy shots). Allergic rhinitis (hay fever) is an allergic reaction to tiny particles in the air called allergens. When you breathe in allergens through your nose or mouth, your body reacts by releasing a natural chemical called histamine. Several indoor and outdoor allergens cause hay fever. Common causes include dust mites, mold, pet dander and pollen from trees and plants.

COVID-19 has infected hundreds of prisoners and staff in city jails, state prisons and federal prisons.

New York, California and Ohio were among the first to release incarcerated people. Other states have followed, saying it is the only way to protect prisoners, correctional workers, their families and the broader community.

Jails and prisons often lack basic hygiene products, have minimal health care

11

services and are overcrowded. Social distancing is nearly impossible except in solitary confinement, but that poses its own dangers to mental and physical health.

While there is absolutely no evidence to support that any person is more or less likely to be infected [with COVID-19] based on existing medical conditions, Popoca's argues that, first, prisoners experience exponentially higher rates of COVID-19 than the general population. As of June 2020, "[t]he COVID-19 case rate for prisoners was 5.5 times higher than the US population case rate."[3] Second, and more critically, older individuals and individuals with chronic medical conditions are at greater risk of hospitalization and death from COVID-19. For example, the CDC reports that persons aged 40 to 49 are 15 times more likely to be hospitalized and 130 times more likely to die from COVID-19 compared to persons aged 18 to 29 and younger.[4] In other words, Popoca does not only contend that his health conditions increase his risk of getting COVID-19; but also, he contends that those conditions greatly increase the risk that, if contracted, his COVID-19 infection would be severe or even deadly.

---

[3]

Brendan Saloner, *et al.*, *COVID-19 Cases and Deaths in Federal and State Prisons*, J. of the Am. Med. Ass'n (July 8, 2020), https://jamanetwork.com/journals/jama/fullarticle/2768249.

[4]

*Hospitalizations & Death by Age*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last updated May 14, 2021).

### *BOP Amid Covid-19*

One consequence of overcrowding is that prison officials have a difficult time providing adequate health care.

In 2011 the U.S. Supreme Court ruled that overcrowding undermined health care in California's prisons, causing avoidable deaths. The justices upheld a lower court's finding that this caused an "unconscionable degree of suffering" in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

Amid a worldwide pandemic, such conditions are treacherous. Some of the worst COVID-19 outbreaks in U.S. prisons and jails are in places – like Louisiana and Chicago – whose prison health systems have been ruled unconstitutionally inadequate. Criminologists and advocates say many more people should be released from jails and prison, even some convicted of violent crimes if they have underlying health conditions.

The decision to release prisoners cannot be made lightly. But arguments against it discount a reality recognized over two centuries ago: The health of prisoners and communities are inextricably linked. Coronavirus confirms that prison walls do not, in fact, separate the welfare of those on the inside from those on the outside.

### *COVID-19 Is a Public Health Disaster That Threatens Vulnerable Incarcerated Persons like Popoca.*

13

As of May 18, 2022, the BOP has 138,786 federal inmates in BOP-managed institutions and 13,382 in community-based facilities. The BOP staff complement is approximately 36,000. There have been 295 federal inmate deaths and 7 BOP staff member deaths attributed to COVID-19 disease. See https://www.bop.gov/coronavirus/ (last accessed May 18, 2022). Bottom line, Federal facilities are not immune.

Conditions of confinement create an ideal environment for the transmission of highly contagious diseases like COVID-19. Because inmates live in close quarters, there is an extraordinarily high risk of accelerated transmission of COVID-19 within jails and prisons. Inmates share small cells, eat together and use the same bathrooms and sinks. . . . . They are not given tissues or sufficient hygiene supplies"); Joseph A. Bick (2007). *Infection Control in Jails and Prisons*. Clinical Infectious Diseases 45(8):1047-1055, at https://academic.oup.com/cid/article/45/8/1047/344842 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise"). BOP employees are complaining that they lack masks and gloves, hand sanitizer, and even soap.

14

"The [BOP] management plan itself acknowledges [that] symptoms of COVID-19 can begin to appear 2-14 days after exposure, so screening people based on observable symptoms is just a game of catch up. . . . We don't know who's infected." *Manrique*, 2020 WL 1307109, at *1.10

Indeed, as the Second Circuit recently observed, present information about the COVID-19 epidemic and the BOPs' prior failings in 2019 to adequately protect detainees and allow them access to counsel and their families following a fire and power outages suggest that the virus' impact will likely be "grave and enduring." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, No. 19-1778, 2020 WL 1320886, at *12 (2d Cir. Mar. 20, 2020).

### ***Popoca's Vulnerability to COVID-19 Due to His High Medical Risk Is an Extraordinary and Compelling Reason That Warrants a Sentence Reduction.***

Popoca is particularly vulnerable to COVID-19 because of his hypertension and allergic rhinitis. At the time of sentencing, the Court could not have anticipated that Popoca's diseases will place him in the "high risk" category nor the existence of the COVID-19. As the COVID-19 pandemic continues, it potentially poses a particular issue for older people and people with pre-existing medical conditions (such as serious heart condition, lung disease, and autoimmune disease) appear to be more vulnerable to becoming severely ill with the COVID-19 virus.

15

### *Lung Problems, Including Asthma*

COVID-19 targets the lungs, so you're more likely to develop severe symptoms if you have preexisting lung problems, such as: Moderate to severe asthma, Chronic obstructive pulmonary disease (COPD), Lung cancer, Cystic fibrosis, Pulmonary fibrosis. In addition to being an asthma trigger, smoking or vaping can harm your lungs and inhibit your immune system, which increases the risk of serious complications with COVID-19.

### *Heart Disease, Diabetes and Obesity*

People with diabetes, heart disease, high blood pressure or severe obesity are more likely to experience dangerous symptoms if infected with COVID-19. This may be of particular concern in the United States, which has seen increasing rates of obesity and diabetes over the years. Obesity and diabetes both reduce the efficiency of a person's immune system. Diabetes increases the risk of infections in general. This risk can be reduced by keeping blood sugar levels controlled and continuing your diabetes medications and insulin. Your risk of serious illness may also be higher if you have heart diseases such as cardiomyopathy, pulmonary hypertension, congenital heart disease, heart failure or coronary artery disease.

### *How SARS-COV-2 Causes Disease and Death in COVID-19*

"You'd think underlying lung problems or immune system problems will be the greatest risk," says Dr. Levitt. "But it seems the biggest risk factors have been hypertension, diabetes and obesity." That has led many scientists to suspect that the profound inflammation seen in severe cases of COVID-19 may be yet another problem linked to SARS-COV-2's fondness for ACE2. People with diabetes, hypertension and heart disease have more ACE2 on their cells as a response to the higher levels of inflammation that come with their condition; ACE2 has an anti-inflammatory effect. When SARS-COV-2 sticks to ACE2 and reduces its ability to do its job, the underlying inflammation gets worse.

When inflammation gets completely out of control the body enters what is called a cytokine storm. Such storms drive the most severe outcomes for COVID-19, including multi-organ failure. There is thus an obvious role for anti-inflammatory drugs. But knowing when to administer them

16

is hard. Go too late, and the storm will be unstoppable; go too early, and you may dampen down an immune response that is turning the tide. A recent article in the Lancet suggests that it would help if COVID-19 patients were routinely screened for hyper-inflammation to help identify those who might benefit from anti-inflammatory drugs. But not everyone is convinced today's drugs have much to offer. "We tried [a range of anti-inflammatory treatment] and it actually didn't work," says Rajnish Jaiswal, who has been working on the front line of COVID-19 treatment at New York's Metropolitan Hospital.

https://www.economist.com/briefing/2020/06/06/how-sars-cov-2-causes-disease-and-death-in-covid-19.

Hence, it is appropriate for Popoca to be released into an environment where he and his loved ones can control and direct his medical care. It is important for all of us to remember that convicted criminals are sent to prison as punishment—not for punishment. People who are severely debilitated or are in the midst of dying are usually no longer a threat to society, and there is not a compelling social advantage to keeping them in prison.

**Note:**   According to the Centers for Disease Control and Prevention ("CDC"), COVID-19 is a new disease and there is limited information regarding risk factors for severe disease. Based on currently available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19.

a.    Based on what we know now, those at high-risk for severe illness from COVID-19 are:
- People 60 years and older
- People who live in a nursing home or long-term care facility

b.    People of all ages with underlying medical conditions, particularly if not well controlled, including:

17

- Cancer
- Chronic kidney disease
- Chronic lung diseases, including COPD (chronic obstructive pulmonary disease), asthma (moderate-to-severe), interstitial lung disease, cystic fibrosis, and pulmonary hypertension
- Dementia or other neurological conditions
- Diabetes (type 1 or type 2)
- Down syndrome
- Heart conditions (such as heart failure, coronary artery disease, cardiomyopathies or hypertension)
- HIV infection
- Immunocompromised state (weakened immune system)
- Liver disease
- Overweight and obesity
- Pregnancy
- Sickle cell disease or thalassemia
- Smoking, current or former
- Solid organ or blood stem cell transplant
- Stroke or cerebrovascular disease, which affects blood flow to the brain
- Substance use disorders

are the hallmark of those who are most endangered by the instant pandemic. These are "extraordinary and compelling reasons" for his release. See Note 1(A), § 1B1.13 (expressly recognizing that "other reasons" may exist for granting compassionate release), see Note 1(D), § 1B1.13 Note 1(D) (recognizing that extraordinary and compelling reasons exists "other than, or in combination with, the reasons described in subdivisions (A) through (C)."). Here, Popoca's high susceptibility to COVID-19 falls within the purview of this catchall. Moreover, courts have noted that while § 1B1.13 provides "helpful guidance" for determining what constitutes an extraordinary

and compelling reason to warrant a sentence reduction, the inquiry does not end there. Rather, district courts have the freedom to shape the contours of what constitutes an extraordinary and compelling reason to warrant compassionate release. Given the highly infectious nature of COVID-19, the inability in a facility like FCI to practice any of the hygienic and social distancing techniques that the Center for Disease Control has put in place to prevent rapid transmission, and the fact that Popoca suffers from ailments that have already been identified as "high risk," this Court should find that Popoca's legitimate medical risk is a sufficiently extraordinary and compelling basis for granting compassionate release.

A recent letter by fourteen U.S. senators of both parties underscores this position. Writing to U.S. Attorney General William Barr and BOP Director Michael Carvajal, they stated: "[We] urge you to take necessary steps to protect [inmates in Federal custody] particularly by using existing authorities under the First Step Act (FSA). . . . We have reviewed the Federal Bureau of Prisons (BOP) COVID-19 Action Plan, which . . . notably does not include any measures to protect the most vulnerable staff and inmates. . . . [I]t is important . . . that the most vulnerable inmates are released or transferred to home confinement, if possible." And as the Second Circuit noted about COVID-19 in a unanimous recent opinion, "The impact of this recent emergency on jail and prison inmates, their counsel . . . , the United States

19

Attorneys, and the BOP, including the individual Wardens and the personnel of each facility, is just beginning to be felt. Its likely course we cannot foresee. Present information strongly suggests, however, that it may be grave and enduring." *Fed. Defs. of New York, Inc.*, 2020 WL 1320886, at *12.

Finally, in the last months, other jails and prisons have already started to proactively release elderly and sick inmates who are at high risk of infection, as well as releasing as many nonviolent offenders as possible in an effort to reduce the incarcerated population and thus reduce the risk of spread. For example, on March 25, 2020, New York City announced that it would release 300 inmates from Rikers Island. Approximately 1,700 inmates have been released from Los Angeles County Jails, and 1,000 inmates are to be released from New Jersey jails. Therefore, while COVID-19 remains an unprecedented emergency, many states (and politicians) have recognized that they have a duty to flatten the curve inside incarcerated spaces. So, too, should this Court.

### *Courts Have Granted Compassionate Release in Light of the Instant Pandemic.*

Courts in the Southern and Eastern Districts of New York have granted compassionate release based on COVID-19. See *United States v. Wilson Perez*, No. 17 Cr. 513 (AT) (S.D.N.Y. Apr. 1, 2020), ECF No. 98, (granting release based on

20

health issues and finding court could waive exhaustion requirement; government did not object based on defendant's medical conditions); *United States v. Mark Resnick*, No. 12 Cr. 152 (CM) (S.D.N.Y. April 2, 2020), ECF No. 461 (granting compassionate release because of defendant's age and medical conditions in light of COVID-19); *United States v. Eli Dana*, No. 14 Cr. 405 (JMF) (S.D.N.Y. Mar. 31, 2020), ECF No. 108 (granting compassionate release motion, where government consented, because of defendant's age and medical conditions and the risk posed by COVID-19); *United States v. Damian Campagna*, No. 16 Cr. 78 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) (granting compassionate release sentencing reduction to defendant convicted of firearms offenses based on defendant's health and threat he faced from COVID-19; government consented to reduction and agreed health issues and COVID-19 were basis for relief); *United States v. Daniel Hernandez*, No. 18 Cr. 834 (PAE) (S.D.N.Y. Apr. 1, 2020), ECF No. 446 (granting compassionate release after BOP denied the request and converting remaining sentence to home confinement).

So, too, have courts across the country. See *United States v. Andre Williams*, No. 04 Cr. 95 (MCR) (N.D. Fla. Apr. 1, 2020) (granting release based on defendant's health and COVID-19); *United States v. Teresa Ann Martin*, No. 18 Cr. 232 (TOR) (E.D. Wa. Mar. 25, 2020), ECF No. 834 (waiving any further exhaustion attempts as

21

futile and granting compassionate release based on defendant's health issues and COVID-19 pandemic); *United States v. Jeremy Rodriguez*, No. 03 Cr. 271 (AB) (E.D. Pa. Apr. 1, 2020), ECF No. 135 (finding court has independent authority to determine "extraordinary and compelling" reasons and granting compassionate release based in part on defendant's health and COVID-19; no exhaustion issue because 30 days had passed); *United States v. Pedro Muniz*, No. 09 Cr. 199 (S.D. Tex. Mar. 30, 2020), ECF No. 578 (granting compassionate release based on health conditions that made inmate susceptible to COVID-19); *United States v. Samuel H. Powell*, No. 94 Cr. 316 (ESH) (D.D.C. Mar. 27, 2020), ECF No. 97 (granting compassionate release for 55-year old defendant with respiratory problems in light of outbreak, without waiting for 30 days or other exhaustion of administrative remedies through the BOP); *United States v. Agustin Francisco Huneeus*, No. 19 Cr. 10117 (IT) (D. Mass. Mar. 17, 2020), ECF No. 642 (granting defendant's emergency motion based on COVID-19); *US v. Foster*, No. 1:14-cr-324-02 (M.D. Pa. Apr. 3, 2020) ("The circumstances faced by our prison system during this highly contagious, potentially fatal global pandemic are unprecedented. It is no stretch to call this environment 'extraordinary and compelling,' and we well believe that, should we not reduce Defendant's sentence, Defendant has a high likelihood of contracting COVID-19 from which he would "not expected to recover." USSG §§ 1B1.13. No rationale is more compelling or

22

extraordinary."); *US v. Powell*, No. 1:94-cr-0316-ESH (D.D.C. Mar. 24, 2020), Recommendation, Dkt. 94 (Court recommendation to BOP to immediately place defendant, who is 55-years old and suffers from several respiratory problems (including asthma and sleep apnea) into home confinement to serve the remainder of his prison term).

See also, *United States v. Watkins*, Case No. 15-20333 (E.D. Mich. Jul. 16, 2020), granting compassionate release to prisoner whose only underlying condition was previously-treated latent TB; and *Singh v. Barr*, No. 20-CV-02346-VKD, 2020 WL 1929366, at *10 (N.D. Cal. Apr. 20, 2020) (granting release from immigration custody for petitioner with latent TB, hypertension, and obesity); and *United States v. Gerard Scparta*, No. 18 Cr. 578 (AJN), ECF Dkt. 69 (S.D.N.Y. Apr. 19, 2020). In *Scparta,* Judge Nathan granted a compassionate release motion of a 55-year old defendant who suffers from high blood pressure, high cholesterol, sleep apnea, and hypertension. The court found that it could waive § 3582(c)(1)(A)'s 30-day waiting period and hear the motion, and describes FCI Butner's "Kafkaesque" "14-day quarantine" process—which is neither a true "quarantine" nor actually limited to 14 days—before releasing inmates to home confinement.

**Fact:** The vaccine mandates. It's now a proven fact that being vaccinated and boosted neither protects you from contracting the virus, nor spreading it. And more

shocking is the new data that the vaccinated are more likely to contract Omicron than the unvaccinated. Hence, it is wrong to downplay the effectiveness and durability of natural immunity from previous COVID exposure. This is the T and B cell immunity that endures long after antibodies have waned.

### b. Drug Weight Calculation

- ### Drug Weight

The drug weight is an element of the offense and that any fact that increases a penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, if Popoca were sentenced today, his sentence would be based on: conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine (Count 1); possession with intent to distribute 500 grams or more of cocaine base (Count 2), and not 37 kilograms of cocaine base.

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt.

*Alleyne* made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the sentence is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at 116, 133 S.Ct. 2151. In this case, Popoca was found guilty of conspiracy to distribute and possession with intent to distribute 5 kilograms or more of cocaine (Count 1) and possession with intent to distribute 500 grams or more of cocaine (Count 2). Under *Alleyne*, this court is not free to ignore that finding and impose a penalty based on the 37 kilograms of cocaine referenced in the PSR. Thus, although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at *6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); *United States v. Dodd*, No. 3:03-CR-18-3, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "[b]oth *Apprendi* and *Alleyne* are binding on this Court for sentencings held today."); *United States v. Davis*, No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal

25

docketed, No. 19-874 (2nd Cir. Apr. 5, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); see also *United States v. Laguerre*, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

Hence, Popoca claims that if he had been prosecuted after passage of the Fair Sentencing Act, the government would have had to allege 5 kilograms or more of cocaine even though he was held accountable for 37 kilograms of cocaine.

c.    Amendment 782 of the United States Sentencing Guidelines

In April of 2014, the U.S. Sentencing Commission voted to lower the federal drug sentencing guidelines by two (2) levels and sent USSG Amendment 782 to Congress which became effective on November 1, 2014. The Commission then considered whether to make this relief retroactive to current prisoners who have already been sentenced. On July 18, 2014, the Commission voted for full retroactivity of USSG Amendment 782.

*Modification of Sentence pursuant to 18 U.S.C. § 3582(c)(2)*

"In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guidelines provisions that were applied

26

when the defendant was sentenced, and shall leave all other guideline application decisions unaffected." USSG § 1B1.10(b)(1).

After the district court determines what the modified sentence would be, the district court is required to consider any applicable factors under 18 U.S.C. § 3553 in deciding whether a sentence modification is "warranted in whole or in part under the particular circumstances of the case." *Dillon*, 130 S.Ct. at 2692. "Because reference to § 3553 is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into preliminary re-sentencing proceedings." *Id.* Thus, even if Popoca qualifies for sentence modification under the first step of the analysis, the decision whether to ultimately grant a modification is left to the sound discretion of the trial court. See *Dillon*, 130 S. Ct. at 2692.

Applying the First Step Act and USSG Amendment 782 calculations to this case, Popoca's Base Offense Level will be reduced to level 30. See also 2018 Sentencing Guidelines, indicating that "At least 5 KG but less than 15 KG of Cocaine" calls for a Base Offense Level of 30, pursuant USSG § 2D1.1(c)(5); adding 4 levels pursuant to USSG § 3B1.1(a) for role in the offense; and 2 levels pursuant to USSG § 3C1.1 for obstruction of justice, results in a Total Offense Level of 36 in Criminal History Category I, yielding a Guideline range of 188 to 235 months.

27

### d. Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct

Popoca also argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendants who were sentenced at the time of Popoca's sentencing and those being sentenced today under a different sentencing structure. Popoca's sentence in 2010 is now disparate relative to his co-defendants. See table below:

| Case No. | Co-Defendant | Sentence |
|----------|--------------|----------|
| 3:10-cr-00067-RV-2 | Laureano-Arvayo, Jorge | - 120 months |
| 3:10-cr-00067-RV-3 | Jalomo-Ruiz, Juan | - 78 months |
| 3:10-cr-00067-RV-4 | Torres-Rodriguez, Francisco | - 162 months |
| 3:10-cr-00067-RV-5 | Parker, Phillip Dewayne | - 152 months<br>- reduced to 108 months |
| 3:10-cr-00067-RV-6 | Wade, Charles | - 150 months |

In *Nathson Fields v. City of Chicago, et al.*, 981 F. 3d 534; 2020 U.S. App. LEXIS 36615, the Seventh Circuit explains how Earl Hawkins, cooperating co-defendant was released on both federal and state charges in September 2014, with the help of AUSA William Hogan, Cook County Assistant States' Attorney Brian Sexton, and others. See 2020 U.S. App. LEXIS 41.

28

See *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021). Ian Owens appealed the district court's order denying his motion for compassionate release because it concluded that the disparity between his lengthy sentence and the sentence that he would receive following the passage of the First Step Act was not an extraordinary and compelling reason to support compassionate release. However, the Sixth Circuit held that, in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied. The circuit court also considered he fact that his lengthy sentence resulted from exercising his right to a trial and to his rehabilitative efforts as additional factors that considered together constitute an extraordinary and compelling reason meriting compassionate release. Therefore, the Sixth Circuit reversed the district court's order and remanded for reconsideration of Owens' motion for compassionate release.

Popoca essentially argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendants who were sentenced at the time of Popoca's sentencing and those being sentenced today under a different sentencing structure. Popoca's sentence in 2010 is now disparate relative to his co-defendants (as enumerated above).

29

Popoca is now, in effect, to be re-sentenced today, after the passage of the First

Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed

at the time of his sentencing today relative to those comparable offenders who have

been sentenced following the passage of the First Step Act. Nor does the First Step

Act's lack of retroactivity justify withholding sentencing relief given the overall

purpose of the First Step Act amendments, which expressly allowed for the possibility

for a sentence reduction based on an individualized assessment of the § 3553(a)

factors and other criteria.

Next, Popoca argues that a reduction of sentence is warranted to avoid

unwanted sentencing disparities, taking into consideration case-specific

circumstances related to Popoca's character, and in light of his post-sentencing

rehabilitation. Popoca contends that leaving his current sentence in place would

create at least two kinds of disparity: (1) a disparity between Popoca and his co-

defendants; and (2) a disparity between Popoca and other drug offenders who have

received reductions under the First Step Act. In addition to the need to avoid

unwarranted sentence disparities, Popoca argues that the unique circumstances of his

case warrant a variance.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006)

(recognizing that "a district court may consider disparities among co-defendants in

determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States*

*v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

### e.    Recidivism Risk Level

In Popoca's almost 12 years of imprisonment, Popoca has matured from a rash young-adult pursuing a lawless lifestyle, to a reflective, empathetic matured responsible middle-aged man. According to the Overview of Federal Criminal Cases published by the United States Sentencing Commission for the fiscal year of 2020, the average sentence imposed for murder is 255 months. U.S. SENTENCING COMM'N, OVERVIEW OF FEDERAL CRIMINAL CASES, FISCAL YEAR 2020, at 9 (2021). However, Popoca was not sentenced for murder, but rather for drug conspiracy/trafficking. He was in his 30's when he committed the instant offense,

32

thus he has served more than one-third of his life behind bars. This is significant

punishment for his drug conspiracy/trafficking, depriving him of "the family life" that

he "cherish[es] more than anything."

Popoca urges the Court to consider the following case citations:

- *United States v. Sain*, Case No. 07-20309 (E.D. Mich. Oct. 6, 2020) quoting *United States v. Redd*, 444 F. Supp. 3d 717, 729 (E.D. Va. 2020) (finding sentence reduction proper where inmate "demonstrated a commitment to self-improvement, devoting hundreds of hours to vocational programs, assisting others in their rehabilitative efforts, exhibiting solid work habits, caring for mental health inmates, and in the process exceeding his supervisor's expectations across most, if not all, areas of work"); *United States v. Parker*, No. 98-CR-00749, 2020 WL 2572525, at \*11 (C.D. Cal. May 21, 2020) (collecting cases).

- *United States v. Clark*, Case No. 11-CR-30-2-JPS (E.D. Wis. Jul. 23, 2020) quoting that in *Redd*, the Court evaluated whether extraordinary and compelling reasons existed to reduce the sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020 WL 1248493, at \*5. There, the court determined that the disparity was "primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id*. at \*6.

- *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at \*5 (D. Utah Feb. 18, 2020) (considering § 924(c) stacking changes one of several extraordinary and compelling reasons); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at \*4 (D. Neb. Nov. 14, 2019) ("A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty

years longer than Congress now deems warranted for the crimes
committed.").

And

- Section 1B1.13 has not been updated to reflect pursuant to the
2018 First Step Act, hence, defendants now have the ability to
bring such motions directly. This anomaly has given rise to a
debate concerning whether and to what extent § 1B1.13 applies
to motions filed by defendants, with several circuits recently
holding that § 1B1.13 applies only to motions filed by the Bureau
of Prisons, and not to motions filed by defendants on their own
behalf. See *United States v. McCoy*, Nos. 20-6821, 20-6869,
20-6875, 20-6877, 2020 WL 7050097, at *6-7 (4th Cir. Dec. 2,
2020); *United States v. Jones*, No. 20-3701, 2020 WL 6817488,
at *8-9 (6th Cir. Nov. 20, 2020); *United States v. Gunn*, No.
20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020);
*United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020).

Factoring in Popoca's medical condition, his continued risk to the public if

released appears to be markedly reduced as recidivism declines with age, particularly

when tempered by significant rehabilitation. Popoca is now almost 45 years old,

making him substantially less likely to recidivate than a younger offender. According

to a report by the U.S. Sentencing Commission, Popoca, at over 45 to 49 years old,

has a recidivism rate of 10.1 percent. See U.S. Sent'g Comm'n, The Effects of Aging

on Recidivism Among Federal Offenders 3 (Dec. 2017) (reporting that "recidivism

measured by rearrest, reconviction, and reincarceration declined as age increased"

and that offenders aged 65 or older had a rearrest rate of 2.1 percent, as compared to

16.4 percent for offenders younger than 29). To date, he has served almost 12 years

in BOP custody and has not committed a violent offense while incarcerated. Given the length of his imprisonment, his personal rehabilitation, and deeply felt remorse, the Court must conclude that deterrence and public protection are no longer strong § 3553(a) factors weighing in favor of continued detention.

Under 18 U.S.C. § 3582(c)(2), to modify Popoca's sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a sentence of time served is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

Finally, the combination of factors, age, health conditions, COVID-19 risk, as well as length of time already served, post-sentencing rehabilitation, and the changing sentencing landscape justify granting compassionate release to Popoca. Else, it would result in unwarranted sentencing disparities among similarly situated defendants. More so, his BOP record does not show that he is violent or a threat to public safety.

## CONCLUSION

For the above and foregoing reasons, Popoca's conviction and sentence should be vacated and remanded to the District Court for resentencing to time served.

Respectfully submitted,

*#07408-017*

*AleJandrino Popoca*

Dated: May *24*, 2022

ALEJANDRINO POPOCA
REG. NO. 07408-017
FCI BASTROP
FEDERAL CORR. INSTITUTION
P.O. BOX 1010
BASTROP, TX  78602

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the word limit of Fed.R.App.P. 32(a)(7)(B)(i), because, excluding the parts of the document exempted by Fed.R.App.P. 32(f), this document contains **8,357** words.

## CERTIFICATE OF SERVICE

I hereby certify that on May *24*, 2022, I sent via U. S. Mail, postage prepaid, a true and correct copy of the Appellant's Brief to Robert G. Davies, at U.S. Attorney's Office, 21 East Garden Street, Suite 400, Pensacola, FL 32502.

*AleJandrino Popoca*

ALEJANDRINO POPOCA
*#07408-017*

36

**APPENDIX 1A:**
**"District Court's Order Denying Popoca's**
**Motion for Compassionate Release"**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

UNITED STATES OF AMERICA

VS                                    CASE NO. 3:10cr67-RV

ALEJANDRINO POPOCA

## REFERRAL AND ORDER

| | |
|---|---|
| Referred to Judge Vinson on | 1/28/2022 |
| Type of Motion/Pleading | MOTION for Compassionate Release Reduction in Sentence |

| | | | | | |
|---|---|---|---|---|---|
| Filed by: | Defendant | on | 1/21/2022 | Doc. No. | 492 |

_____ Stipulated/Consented/Joint Pleading/Unopposed

| | | | | | |
|---|---|---|---|---|---|
| Response: | Government | on | 1/28/2022 | Doc. No. | 493 |

JESSICA J. LYUBLANOVITS
CLERK OF COURT
/s/ Sylvia Williams
Deputy Clerk

## ORDER

Upon consideration of the foregoing, it is ORDERED this 1st day of February, 2022, that:

(a)  The requested relief is DENIED, for the reasons set out in the government's response (doc. 493)

  /s/ Roger Vinson
ROGER VINSON
SENIOR UNITED STATES DISTRICT JUDGE

**APPENDIX 2A:**
**"Popoca's Notice of Appeal Re: Denial of His**
**Motion for Compassionate Release"**

United States District Court
Northern District of Florida
Pensacola Division

United States of America        §          Case No.
v.                             §          3:10cr67
Alejandrino Popoca              §

## Notice of Appeal

Notice is hereby given that ALEJANDRINO POPOCA, defendant in the
above named cause, hereby appeals to the United States Court of
Appeals for the 11th Circuit from an Order denying defendant's
motion for compassionate release


*AlcJondrino Popoca #07408-017*
ALEJANDRINO POPOCA
Register Number 07408-017
FCI Bastrop

4.P

Northern District of Florida
Pensacola Division

UNITED STATES OF AMERICA

v.

Alejandrino Popoca

§
§
§
§
§

CASE NO.

3:10 cr 67

CERTIFICATE OF INMATE FILING

I am an inmate confined at Federal Correctional Institution Bastrop.
Today, *March 18/2022* , I am depositing the filing which
is captioned *NOTICE OF APPEAL* into
the institution's internal mail system. First-class postage is
being prepaid either by me or by the institution on my behalf.

I declare that the foregoing is true and correct, under penalty
of perjury. (See 28 U.S.C. § 1746; 18 U.S.C. § 1621)

Signed. *Alejandrino Popoca* on this date *March 18/2022*

A. P

Alejandrino Popoca
# 07708-017
Federal correctional institution
P. Box 1010
Bastrop TX 78602

AUSTIN TX 786
RIO GRANDE DISTRICT
21 MAR 2022 PM 3 L

CHECKED MAR 25 2022

US DISTRICT COURT
100 North Palafox street
Pensacola. FL 32502

32502-483900

**APPENDIX 3 A:**
**"DISRTICT COURT ORDER FOR DENYING HIS MOTION FOR COMPPASSIONATE RELEASE"**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                     Case No.:    3:10cr67/RV/EMT

ALEJANDRINO POPOCA

---

## **ORDER**

This case is before the Court on Defendant's Motion Seeking Authorization to Proceed In Forma Pauperis.    (ECF No. 497.)    Defendant appeals the Court's February 1, 2022 order denying his Motion for Compassionate Release.    (ECF No. 494.)    Upon due consideration of the record, the requested relief will be denied, because the undersigned finds the appeal is not taken in good faith and Defendant is not otherwise entitled to so proceed.    *See* Fed. R. App. P. 24(a)(3).

Accordingly, it is **ORDERED**:

1. Defendant's Motion for Leave to Appeal In Forma Pauperis (ECF No. 497) is **DENIED**.

2. To proceed with his appeal, Defendant must pay the $505.00 appellate filing fee within **THIRTY (30) DAYS** from the date of docketing of this order.

DONE AND ORDERED this 29th day of March 2022.

/s/ Roger Vinson                    /
**ROGER VINSON**
**SENIOR UNITED STATES DISTRICT JUDGE**

Case No.: 3:10cr67/RV/EMT